IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GATEWAY CENTER IV, L.C., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:10-cv-00063 (AJT/JFA) |
| COST PLUS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter came before the Court on the Motion for Partial Summary Judgment (Doc. No. 10) filed by Plaintiff Gateway Center IV, L.C. ("Gateway"). Upon consideration of the Motion, the opposition thereto, and the arguments of counsel at the hearing held on April 9, 2010, the Motion for Partial Summary Judgment will be granted in part and denied in part.

### I. Facts

Based on the parties' submissions, the following facts are undisputed. Gateway owns Gateway Commons Shopping Center in Gainesville, Virginia (the "Shopping Center"). By Lease Agreement dated August 31, 2006, Gateway leased to Defendant, Cost Plus, Inc. ("Cost Plus"), 18,300 square feet of commercial space in the Shopping Center. The lease term was 120 months with three five year options. This dispute arose after another tenant in the Shopping Center, Linens-N-Things, vacated its space in the Shopping Center, and the parties disagreed as to whether Gateway thereafter satisfied the "co-tenancy" requirements set forth in Section 1.8[1] of the Lease Agreement, which specifies the following tenancies that must exist at the time of the Shopping Center's opening and thereafter on an ongoing basis:

---

[1] Gateway's obligation to satisfy the co-tenancy requirements of Section 1.8 is set forth in section 7.2 of the Lease Agreement.

(a) Opening: (i) Linens-N-Things or a Linens-N-Things Replacement plus (ii) at least one additional retail tenant of not less than fourteen thousand (14,000) square feet of Leasable Floor Area in the Shopping Center; or

(b) Ongoing: (i) Linens-N-Things or Linens-N-Things Replacement, plus (ii) at least one other retail tenant of not less than fourteen thousand (14,000) square feet of Leasable Area in the Shopping Center, plus (iii) additional retail and restaurant space, such that a total of twenty thousand (20,000) square feet of Leasable Area, including restaurant space shall be open to the public.

The Lease Agreement defines "Linens-N-Things Replacement" as follows:

a tenant occupying not less than 28,000 square feet of Leasable Floor Area with at lease one-hundred fifty (150) stores nationwide in shopping centers similar to the Shopping Center.

Lease Agreement at § 2.1(l.1)

Cost Plus opened its store in the Shopping Center on July 13, 2008. Linens-N-Things opened on July 24, 2008,[2] and Sports Authority opened on August 8, 2008. Sports Authority occupied over 28,000 square feet of the Shopping Center and had at least one-hundred fifty stores nationwide in shopping centers similar to the Shopping Center, and therefore, in combination with Linens-N-Things, satisfied the "Opening" co-tenancy requirements. Linens-N-Things, however, vacated the Shopping Center in December, 2008. On March 6, 2009, Cost Plus wrote a letter to Gateway taking the position that in light of Linens-N-Things' leaving the Shopping Center, Gateway had not satisfied the ongoing co-tenancy requirement and Cost Plus was entitled to pay only 50% of the rent otherwise required under the Lease Agreement (the "50% Minimum Rent"). In a letter to Cost Plus dated March 25, 2009, Ronald Ramos, Gateway's Lease Administrator, agreed that following Linens-N-Things' leaving the Shopping

---

[2] Gateway asserts in its Memorandum of Law in Support of its Motion for Partial Summary Judgment (Doc. No. 11) that Linens-N-Things was open before Cost Plus opened its store, while Cost Plus asserts the above dates. For the purposes of this Motion for Partial Summary Judgment, the dispute is not material and the Court will accept the facts as presented by the non-movant, Cost Plus.

Center, Gateway had not satisfied the ongoing co-tenancy requirement and that Cost Plus was therefore entitled to pay only the 50% Minimum Rent. Five months later, on August 31, 2009, Gateway changed its position and claimed that even though Linens-N-Things was no longer a tenant, Sports Authority along with other stores in the Shopping Center continued to satisfy the ongoing co-tenancy requirement under Section 18.1(b)(ii). Based on that position, it demanded that Cost Plus pay the 50% of the rent Cost Plus had withheld since March, 2009 and also begin paying the full amount of rent going forward. On September 11, 2009, "under protest, with a reservation of all rights under [its] lease relating to the failure of the Ongoing Co-Tenancy Requirement," Cost Plus paid the outstanding arrearage Gateway claimed. Then, in a letter dated October 29, 2009, Cost Plus advised Gateway that since in its view Gateway had not satisfied the ongoing co-tenancy requirement, it intended to pay only the 50% Minimum Rent going forward and in addition, intended to off-set against that future rent obligation the 50% arrearage it had recently paid on September 11, 2009, as well as 50% of the rent it had paid after September 11, 2009. On January 8, 2010, Cost Plus notified Gateway that it intended to terminate the Lease Agreement on February 7, 2010 and vacate the Shopping Center pursuant to Section 7.2(b) of the Lease Agreement, which allows Cost Plus to terminate the Lease Agreement if the ongoing co-tenancy requirement remains unsatisfied for the period of one year.[3] On January 22, 2010, while Cost Plus still occupied its space at the Shopping Center, Gateway filed its two count Complaint in this action (Doc. No. 1), seeking in Count 1 a declaratory judgment that it had satisfied the ongoing co-tenancy requirement, and claiming in Count 2 that Cost Plus had breached the Lease

---

[3]Section 7.2(b) provides in pertinent part:

> If the On-Going Co-Tenancy Requirement remains unsatisfied for a continuous period of one (1) year, Landlord shall provide written notice of such to Tenant and Tenant may, at its option, terminate this Lease within thirty (30) days after Landlord's notice to Tenant.

3

Agreement by failing to pay rent when due. On February 7, 2010, Cost Plus vacated the Shopping Center and ceased paying any rent. Gateway now seeks summary judgment on Count 2 of the Complaint (Doc. No. 1) on the grounds that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on its claim that Cost Plus has breached the Lease Agreement.[4] Cost Plus claims that Gateway is not entitled to summary judgment as a matter of law, given what Cost Plus claims are the unambiguous terms of the Lease Agreement. Alternatively, Cost Plus argues that, at the very least, it is entitled to obtain outstanding discovery from Gateway and to depose its Lease Administrator concerning his letter dated March 25, 2009 before this Court considers Gateway's Motion for Partial Summary Judgment (Doc. No. 11).

## I. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific

---

[4] Gateway concedes that Count 1, seeking a declaratory judgment, is moot in light of Cost Plus's terminating the Lease Agreement and vacating the Shopping Center on February 7, 2010.

4

facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

Both parties contend that the Lease Agreement is unambiguous insofar as it relates to the parties' dispute. In this regard, Gateway relies on the definition of "Linens-N-Things Replacement" under Section 2.1(l.1) of the Lease Agreement. Cost Plus, on the other hand, argues that the phrase "Linens-N-Things Replacement" itself necessarily imports into the Lease Agreement's explicit definition two requirements: first, that a Linens-N-Things Replacement must be a new tenant that first occupies space in the Shopping Center after Linens-N-Things vacated the Shopping Center and second, that a Linens-N-Things Replacement must occupy the space previously occupied by Linens-N-Things adjacent to Cost Plus's space. The only reason Cost Plus contends that the ongoing co-tenancy requirement was not satisfied was the lack of a "Linens-N-Things Replacement."

The Court concludes that the ongoing co-tenancy requirement and the definition of a "Linens-N-Things Replacement" are unambiguous, that the Lease Agreement does not require that a "Linens-N-Things Replacement" be either a new tenant or occupy the same space as

5

Linens-N-Things, and that Sports Authority satisfies the definition of a "Linens-N-Things Replacement" for the purpose of satisfying the ongoing co-tenancy requirement, following Linens-N-Things' vacating the Shopping Center in December, 2008. For these reasons, the Court concludes as a matter of law that Gateway had at all material times satisfied the ongoing co-tenancy requirement and that Cost Plus breached the Lease Agreement when it vacated the Shopping Center on February 7, 2010 and ceased payment of rent. The Court reaches this conclusion notwithstanding the letter dated March 25, 2009, from Gateway's Lease Administrator initially agreeing with Cost Plus that the ongoing co-tenancy requirement was not satisfied. Because the Lease Agreement is unambiguous on its face, the statement of Gateway's Lease Administrator is nothing more than an erroneous conclusion about what the Lease Agreement means. Under Section 37.11 of the Lease Agreement,[5] Virginia law governs the interpretation of the Lease Agreement. Under Virginia law, where a contract is unambiguous, it is to be construed by the Court as a matter of law, and the Court is not to look outside the four corners of an unambiguous contract for its interpretation, excluding from its consideration as well either party's conduct under the contract. *See Bentley Funding Group, L.L.C., v. SK&R Group L.L.C.*, 269 Va. 315, 324, 332 (2005) ("Where no 'obscurity exists . . . the acts of the parties done under the contracts' bear no weight 'as an indication of their intention.'") (quoting *Moore v. Chesapeake & O. R. Co.*, 159 Va. 703, 730 (1933); *see also Virginia Electric and Power Company v. Northern Virginia Regional Park Authority*, 270 Va. 309, 319 (2005) (holding that the interpretations of the parties can be used as an aid to interpretation, but "not to

---

[5] Section 37.11 provides:

<u>Governing Law.</u> This Lease shall be construed in accordance with and governed by the laws of the state wherein the Store is located, except as otherwise required by mandatory provisions of law.

put a construction on the words the parties have used which they do not properly bear") (quoting *Seabord Air Line R.R. Co. v. Richmond-Petersburg Turnpike Auth.* 202 Va. 1029, 1033 (2001)). For this reason, given the Lease Agreement's merger clause in Section 37.13[6] and the Court's conclusion that the Lease Agreement is unambiguous, there is no prospect that additional discovery would establish a genuine issue of material fact that would preclude summary judgment as to liability,

### IV. Conclusion

For the above reasons, Gateway's Motion for Partial Summary Judgment (Doc. No. 10) will be denied as moot as to Count 1, and will be granted as to liability under Count 2.

An appropriate order will follow.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 15, 2010

---

[6] Section 37.13 provides

> It is understood that there are no oral agreements or representations between the parties hereto affecting this Lease, and this Lease supersedes and cancels any and all previous negotiations, arrangements, brochures, agreements, or representations and understandings, if any, between the parties hereto or displayed by Landlord to Tenant with respect to the subject matter thereof, and none thereof shall be used to interpret or construe this Lease. There are no other representations or warranties between the parties, and all reliance with respect to representations is solely upon the representations and agreements contained in this document.